**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

**U. S. XPRESS, INC.,**

Plaintiff,

v.

**GREAT NORTHERN INSURANCE COMPANY, as subrogee of North American Communications Resource, Inc.,**

Defendant.

Civil No. 01-195 (PAM/JGL)

**ORDER**

---

APPEARANCES

Michael Glover, Esq., for Plaintiff.

Brent Primas, Esq., and Barbara Sheridan, Esq., for Defendant.

---

JONATHAN LEBEDOFF, United States Magistrate Judge

The above-entitled matter came on for hearing before the undersigned Magistrate Judge of District Court on August 9, 2001 on Defendant's Motion to Compel Discovery (Doc No. 16). The case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1.

## I. INTRODUCTION

This case arises out of a May 9, 2000 truck accident and fire in which freight belonging to Defendant Great Northern's assured was destroyed. The truck was carrying telecommunications equipment belonging to NACR,

FILED AUG 2 3 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Great Northern's assured. Plaintiff U. S. Xpress brought this declaratory action seeking a judgment that they were not the carrier involved in the accident. Plaintiff claims Federal Express was actually the carrier. Additionally, Plaintiff says that under the circumstances of this case there is an $800.00 limit to its liability. Great Northern filed a counterclaim attempting to recover from U. S. Xpress the $429,000.00 it paid its assured as a result of the accident.

On March 27, 2001, Defendant served Plaintiff with Defendant's First Request for Production of Documents. On May 7, 2001, Plaintiff provided unsigned "draft responses" which consisted of objections to every request, but failed to provide any actual documents. After Defendant's repeated attempts to compel more adequate responses from Plaintiff and Defendant's narrowing of some requests, documents were provided on July 11, 2001. Defendant asserts that these documents are only partially responsive to the document requests. On July 18, 2001, Plaintiff provided a signed Amended Response to Defendant's First Request for Production of Documents. Defendant brought the present motion to address deficiencies in Plaintiff's responses. Defendant seeks an Order compelling Plaintiff to fully respond to Defendant's document requests. Defendant also seeks costs associated with bringing this motion.

At the motion hearing, the parties stated that many of the discovery disputes were resolved. The overriding issue still remaining is access to any evidence relating to the cause of the truck fire. Specifically, Defendant's

Document Request Nos. 1, 2, 3, 7, 10, 15, and 16 remain in dispute. Therefore, Defendant's motion to compel discovery is denied as moot as to Document Request Nos. 4, 6, 8, 9, 11, 12, 13, 14, 17, 18, 19, 21, 22, 25, 26, 27, and 28. The Court will address the disputed requests individually.

## II. DISCUSSION

The Federal Rules of Civil Procedure provide for liberal discovery. See Fed. R. Civ. P. 26(b)(1); Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978); Hickman v. Taylor, 329 U. S. 495, 501 (1947). Parties may obtain discovery on any matter, not privileged, "related to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). Limited only by the broad scope of Rule 26(b), a party has the right to request any information within the "possession, custody, or control" of the party being served. Fed. R. Civ. P. 34(a). However, a party may obtain documents prepared in anticipation of litigation only upon a showing of substantial need for the documents coupled with a showing of undue hardship in obtaining equivalent documents by other means. See Fed. R. Civ. P. 26(b)(3).

### A. Defendant's Document Request Nos. 1, 2, and 7

Defendant's Document Request No. 1 seeks:

> All documents concerning the Cargo, including contracts of carriage, agreements, bills of lading, airway bills, other contracts, receipts, tallies, reports, samples, instructions, letters of credit, bills, invoices, certificates, damage reports, surveys, memoranda, notices of claim, notes, instructions, descriptions, correspondence and/or any other communications or documents.

Defendant's Document Request No. 2 seeks "[t]he following documents concerning the Carriage":

> all notes, logs, cargo manifests, stowage plans, workbooks or notebooks, survey reports and vehicle inspection records, including but not limited to all maintenance records relating to the Vehicle that carried the cargo at issue and any documents concerning any conditions which could have lead to the fire or to the loss or damage of any cargo while in transit.

Defendant's Document Request No. 7 seeks:

> All documents relating to the examination after the fire of the Vehicle which carried the Cargo, including but not limited to any forensic mechanic reports and documents.

In its written responses and oral argument, Plaintiff raised the following objections to these document requests. First, the requests where "not reasonably calculated to lead to admissible evidence." Second, the information sought "is more easily obtainable, or has already been obtained by defendant, from other sources, including itself." Third, to the extent that other documents are discoverable, there are two documents that were created specifically in anticipation of litigation and are therefore undiscoverable under the work product doctrine: the September 2001 Volvo Fire Investigation Review by Risk Trust Assessment Group ("investigation review") and a U. S. Xpress Accident Claim File which includes documents relevant to the May 9, 2000 vehicle accident ("claims file"). The work product objection was not included in Plaintiff's original "draft responses." This objection was first raised July 18,

2001. Plaintiff also asserts that Request No. 1 is merely duplicative of Request Nos. 2 and 7.

Defendant responds that the documents were produced in the ordinary course of business because Plaintiff, as a common carrier, is required both by statute and contractual obligations to investigate all accidents. Plaintiff does not rebut this argument. In addition, Defendant argues that Plaintiff waived the work product objection because it failed to raise the argument in a timely manner.

### 1. **Plaintiff's Objections Based on Relevancy and Obtainability**

At the motion hearing, the parties focused on Plaintiff's third objection, the work product doctrine. The Court will dispense with Plaintiff's other objections before addressing the work product doctrine. The Court finds that the requested documents are indeed relevant to Defendant's counterclaims and are calculated to lead to admissible evidence. The only connection Defendant has to this fire is the cargo. The cargo was the property of Defendant's insured and, but for the cargo's destruction, Defendant would not be involved in this lawsuit. Defendant's counterclaims include negligence, breach of warranty, and strict liability. All of these legal theories require very fact-based research. The requests are, therefore, very relevant to Defendant's claims. The logical place to obtain the facts is from Plaintiff. Moreover, the requested documents are uniquely in the "possession, custody [and] control" of

Plaintiff. See Fed. R. Civ. P. 34(a). Plaintiff does not indicate other sources from which Defendant could obtain logs, survey reports, vehicle inspection records, bills, certificates, or any other internal documents Defendant requests.[1] The Court finds that these requests are tailored to lead to the discovery of admissible evidence and that Plaintiff is the only party who can provide this information. Defendant is entitled to the requested discovery as to all documents requested in Document Request Nos. 1, 2, and 7 with the exception of the investigation review and the claims file, which are discussed below.

**2. Plaintiff's Objections Based on the Work Product Doctrine**

Defendant argues that Plaintiff's work product objection is untimely and, therefore, Plaintiff waived the objection. The timing of objections to document requests is governed by Federal Rule of Civil Procedure 34(b). The Rule states that "[t]he party upon whom the request is served shall serve a written response within 30 days after the service of the request . . . . A shorter or longer time may be . . . agreed to by the parties." Fed. R. Civ. P. 34(b). Answers must contain specific objections. See id. The comments to Rule 34(b) refer the reader to Rule 33, stating that "the procedure provided in Rule 34 is

[1] In Plaintiff's amended responses, Plaintiff does direct Defendant to see certain documents previously provided. However, Defendant argues that inspection of these documents still results in deficient responses.

essentially the same as that in Rule 33, as amended, and the discussion in the note appended to that rule is relevant to Rule 34 as well." Fed. R. Civ. P. 34(b) advisory committee's note (1970 amendment). Rule 33 states that "[a]ny ground not stated in a timely objection is waived unless the party's failure to object is excused by the court for good cause shown." Fed. R. Civ. P. 33(b)(4). The comments to the rule make it clear that "unstated or untimely . . . objections are ordinarily waived." Fed. R. Civ. P. 33(b)(4) advisory committee's note (1993 amendment).

In this case, the Court finds that Plaintiff's objection based on work product is untimely and, therefore, waived. The rules are clear. Absent an agreement of the parties or a court order, answers must be served within 30 days. The answers must contain all objections to discovery requests or they are waived. In the instant case, it is apparent from Defendant's correspondence that there was no agreement to extend the time for responding to Defendant's document requests. Even if the correspondence and telephone calls between the parties could somehow be construed as permission to extend the time to produce documents, it does not logically follow that such an extension would include time to raise new objections to the requests. Plaintiff asserts no explanation as to why the work product objection came two and one-half months after its other objections. The documents at issue existed at the time Plaintiff was served with Defendant's document request. Defendant

asserts that these documents were the subject of conversations with Plaintiff long before Plaintiff claimed they were work product. Plaintiff does not rebut this argument. The Court, therefore, finds that Plaintiff has not demonstrated that good cause exists to excuse Plaintiff's failure to object in a timely manner. On this basis, alone, Defendant's motion is granted as to Document Request Nos. 1, 2, and 7. However, the Court also finds that the investigation report and claims file are not work product and are therefore discoverable.

The Federal Rules of Civil Procedure codify "the work product doctrine" and provide, in pertinent part:

> "[A] party may obtain discovery of documents and tangible things . . . prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative . . . only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

Fed. R. Civ. P. 26(b)(3).

The Supreme Court has stated that the purpose of the doctrine is to prevent "unwarranted inquiries into the files and mental impressions of an attorney." Hickman v. Taylor, 329 U. S. 495, 510 (1947). The work product doctrine is based on the reasoning that a lawyer must "work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." Id. However, the protection is a qualified one and the protection will not attach unless documents were prepared specifically in

anticipation of litigation. See Simon v. G.D. Searle & Co., 816 F.2d 397, 401 (8th Cir. 1987). Documents prepared "in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes" do not fall under the protection of the work product doctrine. Fed. R. Civ. P. 26(b)(3) advisory committee's note (1970 amendment); see also Simon, 816 F.2d at 401. The fact that a party "anticipates the contingency of litigation resulting from an accident or event" does not bestow automatic work product protection. See Mission Nat'l Ins. Co. v. Lilly, 112 F.R.D. 160, 163 (D. Minn. 1986) (citation omitted); Diversified Indus. v. Meredith, 572 F.2d 596, 604 (8th Cir. 1978) (holding that concerns that employee conduct may result in litigation is not enough to give attending investigation reports work product status). Furthermore, merely involving an attorney in normal business activities or transferring documents to an attorney or legal department does not make them privileged under the doctrine. See Peterson v. Douglas County Bank & Trust Co., 967 F.2d 1186, 1189 (8th Cir. 1992) (citations omitted). In addition, lest over-application of the work product doctrine "eviscerate the discovery rules and their purpose," everything that contains an "inkling of a lawyer's mental impressions, conclusions, opinions or legal theories" is not work product. Mead Corp. v. Riverwood Natural Res. Corp., 145 F.R.D. 512, 520 (D. Minn. 1992). Moreover, relevant facts are not work product because they do not necessarily implicate the origin of the facts

that will be used by a party or an attorney's impressions regarding those facts. See id. at 518. One must keep in mind that "knowledge of all relevant facts gathered by both parties is essential to proper litigation." Id. at 520.

The Eighth Circuit has adopted a fact-based test to determine if documents were prepared in anticipation of litigation:

> [W]hether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation. But the converse of this is that even though litigation is already in prospect, there is not work product immunity for documents prepared in the regular course of business rather than for the purposes of litigation.

Simon, 816 F.2d at 401 (citations omitted).

The work product doctrine is to be applied in a "common sense manner." Pittman v. Frazer, 129 F.3d 983, 988 (8th Cir. 1997) (citation omitted). Although not dispositive of the issue, evidence indicating that documents were prepared in anticipation of litigation includes: (1) that the documents contained the "trial strategies, or thinking, of [] lawyers," Stabnow v. Consol. Freightways Corp. of Del., No. 99-641, 2000 WL 1336645, at *2 n.4 (D. Minn. Aug. 15, 2000); (2) that they were prepared in response to a letter threatening legal action, see Bituminous Cas. Corp. v. Tonka Corp., 140 F.R.D. 381, 385, 389 (D. Minn. 1992); (3) that they contained attorney impressions and opinions, see Bieter Co. v. Blomquist, 156 F.R.D. 173, 179-80 (D. Minn. 1994); (4)

that the documents at issue represented an attorney's "selection process" regarding what documents were relevant to the case, see Shelton v. Am. Motors Corp., 805 F.2d 1323, 1328-29 (8th Cir. 1986); (5) that the work could not have been performed by non-lawyers, see Diversified Indus., 572 F.2d at 603; and (6) that a firm was hired specifically "to provide legal services and advice," not to investigate and provide recommendations regarding future conduct, id.

Applying the factors to the present case, the Court finds that neither the investigation review nor the claims file is protected under the work product doctrine. The Court conducted a thorough in-camera review of the documents which consist of a collection of e-mails, interoffice memos, reports, and letters all focusing on solving a company problem. Preventing further property loss and insuring driver safety are the focus of the documents. There is no mention of litigation and the work was done by non-lawyers. The Court is mindful that work product protection can attach to work done by non-lawyers at the behest of attorneys. See Fed. R. Civ. P. 26(b)(3). However, the documents must still be prepared in anticipation of litigation. These documents do not meet that threshold requirement. While it may be true that Plaintiff thought that litigation was a distinct possibility, that alone will not protect the documents. See Mission Nat'l Ins., 112 F.R.D. at 162.

Plaintiff asserts no "factual situation," such as a letter threatening litigation, that make it reasonable to anticipate litigation. See Simon, 816 F.2d at 401; McFadden v. Norton Co., 118 F.R.D. 625, 628 (D. Neb. 1988) (holding that a letter seeking reimbursement for worker's compensation benefits which says nothing about litigation cannot reasonably create the anticipation of litigation. The court reasoned that the letter never created a basis for anticipating who would be suing or on what grounds someone may sue. The fact that the situation created a potential for litigation was not a sufficient showing.) In the absence of such assertions, Plaintiff's argument is too attenuated. If all investigations could be protected as work product, the doctrine would surely "eviscerate the discovery rules." Mead, 145 F.R.D. at 520. Defendant argues that Plaintiff is required to investigate accidents because of both contractual and statutory obligations. Plaintiff does not rebut these arguments. Reports created "pursuant to public requirements" are not work product. See Fed. R. Civ. P. 26(b)(3) advisory committee's note (1970 amendment). Therefore, in light of the "factual situation" of this case, the documents were not prepared in anticipation of litigation, but were prepared in the ordinary course of business.

Furthermore, disclosing the documents does not violate the purpose of the rule: protecting the mental impressions of attorneys.

There is no evidence that any of the documents contain the mental impressions of any attorney or evidence of an attorney's "selection process." There is no indication that either the investigation review or the claims file was created by an attorney or anyone acting on behalf of an attorney. Mr. Parks, Executive Vice President-Administration for Plaintiff, states in his affidavit that he ordered an investigation "in anticipation of litigation" but none of the documents, which are mostly communications, refers to a legal investigation or to being done at the behest of counsel. See Simon, 816 F.2d at 402.

Specifically, with respect to the claims file, twenty-eight out of thirty-one pages of the file appear to be calculations of losses sustained in the fire, copies of check requests relating to those losses, copies of checks, and a letter explaining how to file an insurance claim. The other three pages consist of what appear to be police reports and an e-mail requesting that insurance coverage be discontinued for damaged vehicles.[2] It is the Court's opinion that all of these documents would have been created whether or not Plaintiff anticipated, or became involved in, litigation related to the truck crash. The Court can find no

---

[2]Plaintiff provided no index to the in-camera documents and many of the documents did not contain identifying information. The Court therefore assessed each document as best it could in light of the factual situation of the case. Simon, 816 F.2d at 401.

attorney impressions warranting protection. In the absence of such evidence, the Court must be guided by the other provisions of Rule 26 which allow for liberal discovery. The e-mail about discontinuing insurance coverage arguably contains the opinion of Plaintiff's employee. However, this statement is an attempt at a joke and cannot reasonably be said to have been prepared in anticipation of litigation. No business would continue insurance coverage on a truck that no longer exists and, therefore, this e-mail is an ordinary business communication.

As to the investigation review, much of the review consists of photos of the insured vehicle; forms entitled "Accident Claim Jacket" which each contain short concise recitations of the vehicle involved in an accident, a brief description of the accident, and a listing of expenses and monies paid out; Parts Lists; "Incurred and Reserved Losses" lists; and a mechanic's bill. The documents are routine company forms that were created as a result of accidents and which would have been created even if litigation had not ensued. Therefore, these documents are not work product.

Many of the documents in the investigation review are letters and reports from a company called Infospace which investigated the causes of various truck accidents and offered solutions regarding how to prevent further accidents. The reports and e-mails exchanged between

Infospace and Plaintiff do not resemble documents prepared in anticipation of litigation. Rather, they represent the correspondence of people trying to solve a problem. Indeed, the documents often refer to finding the cause of the fires, determining the scope of the problem, gaining a better understanding of the problem, and fully investigating the problem. Throughout all this correspondence, the focus is safety, not litigation. For example, one such document states that it is necessary to become "proactive" in trying to "preclude new events." Other documents include similar language. The documents contain the objective results of tests which are discoverable as facts. See Mead, 145 F.R.D. at 521. Thus, the Infospace documents are not work product. They are ordinary business communications. It is implausible that Plaintiff would not fully investigate the cause of its accidents. Hiring an outside expert is a reasonable, common sense thing to do under the circumstances. See Pittman, 129 F.3d at 988. The Court finds that the Infospace investigative reports and communications are ordinary business communications which do not fall under the protection of the work product doctrine.

The remaining documents in the investigative review are e-mails and correspondence which all focus on solving the fire problem and insuring driver safety. The only document that remotely indicates

litigation is a statement in an e-mail to a Volvo employee stating, "Our property loss will need to be addressed at a different level." This statement does not indicate even the threat of litigation. The investigation review is not protected work product.

### 3. **Whether Defendant Has Met the Threshold Requirements of Rule 26(b)(3)**

Even assuming arguendo that the documents are work product they are still discoverable under the facts of this case. Defendant has demonstrated a "substantial need" for the documents and its inability to obtain the documents from another source, if at all, without undue hardship. See Fed. R. Civ. P. 26(b)(3). Plaintiff argues that Defendant has not asserted any facts supporting its need for the information. On the contrary, the Court finds that Defendant has made the requisite showing. Defendant's counterclaims arise from the accident and, therefore, information relating to the accident is not only relevant to Defendant's claims, but also needed. Plaintiff possesses unique information that Defendant cannot obtain from another source. Since Plaintiff has offered no alternative sources for this information, the Court must assume that Plaintiff conducted the only investigation into this matter. Fifteen months have passed since the crash. Evidence changes and memories dim. The only way to re-create any of these documents would be for Defendant to conduct its own investigation.

However, such an investigation would be to no avail. At this late date, there is no guarantee that any of the evidence still exists. Furthermore, Defendant is not in a position to conduct such an investigation. Without owning the trucks and knowing the people in the industry, it would be almost impossible for Defendant to re-create these reports. For Defendant to properly form its counterclaims, it must know what Plaintiff knew, or should have known, regarding the safety of its trucks at the time of the accident. All this information is completely in the control of Plaintiff and, therefore, Defendant has overcome the "substantial need" and "undue hardship" barriers. See Mission Nat'l Ins., 112 F.R.D. at 164; St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp., 197 F.R.D. 620, 632 (N.D. Iowa 2000) (reasoning that requiring a party to re-create an arson investigation was an onerous burden sufficient to satisfy the "undue hardship" burden). The Court finds that Defendant has demonstrated the requisite need for the information, such that even if it was work product, it would be discoverable.[3]

[3]The Court acknowledges the difference between "ordinary" work product and "opinion" work product. See Murphy v. Pfizer, 560 F.2d 326, 336 (8th Cir. 1977) (citations omitted); Bieter, 156 F.R.D. at 179-80; Marvin Lumber v. PPG Indus. Inc., 168 F.R.D. 641, 644-45 (D. Minn. 1996). To obtain discovery of ordinary work product, a party must demonstrate only "substantial need" and "undue hardship." See id. On the other hand, opinion work product – the mental impressions, conclusions, or opinions of an attorney regarding litigation – are discoverable only in "rare and extraordinary circumstances." Murphy, 560 F.2d at 336 (citations omitted); Fed. R. Civ. P. 26(b)(3). In this case, the

**4. Whether Defendant's Request No. 1 is Duplicative**

The Court finds that Plaintiff's argument that Document Request No. 1 is merely duplicative of Document Request Nos. 2 and 7 is without merit. The three requests all focus on different characteristics of the cargo and the carriage. Accordingly, this part of Defendant's motion is granted.

**B. Defendant's Document Request No. 3**

Defendant's Document Request No. 3 seeks "[t]he following documents concerning the various Modes of Transport: all contracts between carriers of any kind, interline agreements, including but not limited to U. S. Xpress' contractual agreement with Federal Express." Plaintiff objects to this request for a number of reasons including that "it seeks information which is more commercially sensitive, proprietary and not publicly available." Plaintiff states that it will provide the information if Defendant will sign a confidentiality agreement. Defendant objects to the proposed agreement on the grounds that

---

documents do not contain the opinions of an attorney. Out of eighty-two pages, ten arguably contain information that could be construed as the opinions or conclusions of non-attorneys. However, the Court finds that these documents were not prepared in anticipation of litigation and do not contain mental impressions or opinions regarding any litigation. Rather, they are the factual results of tests, not communications detailing how to "spin" the information or how to best use the information in trial preparation. See Mead, 145 F.R.D. at 521; Mission Nat'l, 112 F.R.D. at 164. Therefore, the two-step "ordinary work product" analysis is appropriate in this case.

it is too restrictive and gives Plaintiff unfettered power to decide what is confidential.

Interestingly, Federal Express has already provided Defendant with a copy of the Federal Express/U. S. Xpress contract at issue. Defendant nonetheless seeks a copy from Plaintiff because Defendant wants to compare the two contracts. Defendant posits that there may be "notations" or other information on Plaintiff's copy of the contract which are missing from the copy provided by Federal Express.

At the motion hearing, the parties agreed to have Plaintiff provide Defendant a copy of the contract with the agreement that the contract be "for attorney's eyes only." Once Defendant has had the opportunity to compare the two contracts, thc parties may schedule a telephone conference with the Court to discuss additional confidentiality concerns with respect to discovery. Accordingly, this part of Defendant's motion is granted.

### C. **Defendant's Document Request Nos. 10 and 15**

At the motion hearing, the only document the parties discussed relative to these requests were photographs of the burned cargo taken by Plaintiff. From this discussion, the Court assumes that Plaintiff's initial objections to these requests which were based on relevancy and Defendant's ability to obtain the information from other sources, have been resolved. Defendant admitted that Plaintiff has provided photographs of the destroyed

cargo which show only "burned remnants." Plaintiff asserts that this is all the evidence it has responsive to this request and that no survey was ever conducted on the burned up property. Defendant did not rebut this argument. The Court finds that, under the circumstances, Plaintiff has fulfilled its discovery obligations as they relate to Defendant's Document Request Nos. 10 and 15. Courts have no way to test the veracity of a party's claim that it has fully complied with the rules and therefore must accept representations that it has complied. See Onwuka v. Fed. Express Corp., 178 F.R.D. 508, 514 n.2 (D. Minn. 1997) (citations omitted); Marvin Lumber, 168 F.R.D. at 643 n.1. Therefore, these parts of Defendant's motion are denied.

**D. Defendant's Document Request No. 16**

Defendant's Document Request No. 16 seeks "[a]ll written statements, signed or unsigned, or notes based upon interviews of any and all witnesses concerning the shipping of, storage of, delivery of, loss of, or damage to the Cargo, or concerning the fire that allegedly damaged the Cargo, or of any other persons having knowledge of facts relevant to these matters."

Plaintiff originally objected to this request on the basis that it was "not reasonably calculated to lead to admissible evidence" and that the information sought "is more easily obtainable, or has already been obtained by defendant, from other sources, including itself." In Plaintiff's amended reply, Plaintiff asserted that it had provided all the information it had relevant to this

request with its response to Document Request No. 7. At the motion hearing, Plaintiff raised (apparently for the first time) an objection based on work product. Defendant argued at the hearing that this objection is waived because it is untimely. Plaintiff responded that its boilerplate language "without waiving its former objections" was part of its answer to Document Request No. 16 and therefore, the work product objection from Plaintiff's response to Document Request No. 7 applies to this request also. The Court need not reach the merits of Plaintiff's argument. The Court found that the work product objection to Document Request No. 7 was untimely, and it follows that the objection is also untimely regarding Document Request No. 16. As for Plaintiff's other objections, the Court finds that witness interviews and information regarding the cargo is very relevant to Defendant's counterclaims and therefore is discoverable. In addition, this material is uniquely in the possession of Plaintiff and must be provided to Defendant because there is no other source from which Defendant can readily obtain this information. Therefore, Defendant's motion is granted as to Document Request No. 16.

Defendant's request for costs and fees is denied.

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED:**

(1) Defendant's Motion to Compel Discovery (Doc. No. 16) is **GRANTED IN PART** and **DENIED IN PART** as set forth fully in the body of this Order; and

(2) Plaintiff must comply with this Order and fully respond to any outstanding discovery requests by September 24, 2001.

Dated: August 23, 2001

JONATHAN LEBEDOFF
United States Magistrate Judge