UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

U.S. Xpress, Inc.,

Plaintiff,

v.

Great Northern Insurance Company
as subrogee of North American
Communications Resource, Inc.,

Defendant.

Civ. File No. 01-0195 (PAM/RLE)

**MEMORANDUM AND ORDER**

Great Northern Insurance Company
as subrogee of North American
Communications Resource, Inc.,

Third-Party Plaintiff,

v.

Volvo Trucks North America, Inc.,

Third-Party Defendant.

This matter comes before the Court on Third-Party Plaintiff Great Northern Insurance Company's Motions in Limine (including its Motion for Sanctions, Motion to Limit Testimony of Paul Beauchamp, and Motion to Exclude Leonard Buckman's Testimony or in the Alternative to Exclude Supplemental Reports of Leonard Buckman and Charles Bird), and Third-Party Defendant Volvo Trucks North America Inc.'s Motions in Limine

FILED DEC 0 9 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

(including Motion to Exclude Testimony of Nathan Ware, Motion to Exclude Evidence of Other Incidents, and Motion to Exclude Evidence of Subsequent Remedial Measures).

**BACKGROUND**

In May 2000, North American Communications Resource, Inc. tendered telecommunications equipment to Federal Express for two shipments from Minnesota to Tempe, Arizona. North American Communications Resource secured insurance on the shipments through Defendant and Third-Party Plaintiff Great Northern Insurance Company ("Great Northern"). Great Northern asserts that the actual value of the goods shipped exceeded $400,000.

Plaintiff U.S. Xpress ("USX") is a shipping company that contracts with Federal Express to provide through shipping services. In this case, Federal Express shipped the goods from Minnesota to Memphis. In Memphis, Federal Express tendered the goods to USX for shipment by truck to Arizona. During the shipment, a fire destroyed the truck and the goods it carried. Great Northern brings products liability claims against the manufacturer of the truck, Third-Party Defendant Volvo Trucks North America, Inc. ("Volvo"). The case is now scheduled for trial on December 10, 2002.

The parties have filed six Motions in Limine, five of which wholly concern the admissibility of evidence at trial, and one of which requests sanctions for discovery violations. The Court first addresses the disputed testimony of three experts. Then the Court considers the remaining Motions, including the Motion for sanctions.

## DISCUSSION

### A. Expert Witness Testimony

Proponents of expert witnesses must prove admissibility by a preponderance of the evidence, Lauzon v. Senco Prods., Inc., 270 F.3d 681, 686 (8th Cir. 2001)(citing Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 592 (1993)), but the trial court has discretion on whether to admit or exclude expert testimony, Miles v. Gen. Motors Corp., 262 F.3d 720, 724 (8th Cir. 2001). Under Federal Rule of Evidence 702, a witness is qualified to testify as an expert on the basis of the witness's knowledge, skill, experience, training or education. See id. Once a witness qualifies as an expert, the district court has the obligation to act as a "gatekeeper," screening the expert's testimony to ensure that it "is not only relevant but reliable." Id. (citing Daubert, 509 U.S. at 589). Further, the testimony should assist the trier of fact, and courts should resolve doubts regarding the usefulness of an expert's testimony in favor of admissibility. Clark v. Hendrick, 150 F.3d 912, 915 (8th Cir. 1998); see also Arcoren v. United States, 929 F.2d 1235, 1239 (8th Cir. 1991)(noting that Rule 702 clearly "is one of admissibility rather than exclusion")(quoted in Lauzon, 270 F.3d at 686).

To determine whether proffered expert evidence satisfies the standard of reliability, the Court must ascertain whether such evidence is "ground[ed] in the methods and procedures of science." Daubert, 509 U.S. at 590. Daubert provides a number of nonexclusive factors for courts to apply in making admissibility determinations: (1) whether the theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; and

(4) whether the theory has been generally accepted. Lauzon, 270 F.3d at 687 (quoting Peitzmeier v. Hennessy Indus., Inc., 97 F.3d 293, 297 (8th Cir. 1996)(paraphrasing Daubert, 509 U.S. at 593-94)).

In this case, three experts' testimonies are challenged. First, Great Northern argues that Volvo's expert witness, Leonard Buckman is unqualified to give his opinion on the design of the truck's warning system. Alternatively, Great Northern requests that the Court exclude the supplemental expert reports of Buckman and Charles Bird, also an expert witness for Volvo. Second, Great Northern challenges the qualifications and reliability of Paul Beauchamp, another of Volvo's expert witnesses. Third, in return, Volvo contends that Great Northern's expert, Nathan Ware, lacks the requisite qualifications and claims that his testimony does not meet the standards of reliability set forth in Daubert.

**1. Leonard Buckman**

Great Northern concedes that Buckman qualifies as an expert on the design of brake systems, but it argues he does not have the experience, training, education, etc., necessary to give opinions on the design of the truck's warning system. In response, Volvo clarifies that Buckman's testimony primarily concerns the design of the brake system and not the adequacy of the warning system. The Court recognizes that the truck's brake system design overlaps with its warning system design in that both indicate to the driver when the brake system is engaged. Therefore, Buckman's testimony on the design of brake systems is generally admissible, including testimony on how those systems indicate to drivers that they are functioning and operable. Volvo concedes, however, that Buckman is not qualified to

testify on the adequacy or inadequacy of warning systems, and such testimony is excluded. The Court will make specific rulings at trial, where the two categories of testimony seem to overlap.

Great Northern also raises complaints about the timeliness of the disclosure of supplemental reports for both Buckman and another of Volvo's expert witnesses, Charles Bird. Great Northern claims that it received Buckman's supplement on November 12, 2002, and Bird's supplement on November 20, 2002. Furthermore, Great Northern argues that the supplemental reports were due no later than September 2, 2002, the deadline for all discovery. In response, Volvo points out that Magistrate Judge Erickson extended the deadline for discovery to November 14, 2002, granting Great Northern's extension request. Volvo also explains that Bird compiled the November 20, 2002 supplement in response to Great Northern's expert's supplement, which it received on November 6, 2002. Because Magistrate Judge Erickson extended the deadline for discovery and for conducting expert depositions until November 14, 2002, the Court will overlook the belated filing of the experts' supplements. Further, Great Northern has not been prejudiced by the untimeliness of the supplements because its own expert has had sufficient time to analyze and respond to the supplemental reports. (See Sheridan Decl. Supp. Great Northern's Mot. Resp. Volvo's Mot. to Exclude Nathan Ware Test. Ex. D.)

**2. Paul Beauchamp**

Great Northern next moves the Court to limit the testimony of Volvo expert witness Paul Beauchamp. While acknowledging that Beauchamp possesses the qualifications

necessary to testify on fire causation, Great Northern argues that he lacks the qualifications and that his testimony is not reliable on the subject of light bulbs. Specifically, Great Northern seeks to challenge the design of the dashboard display, which should have alerted the drivers of the truck that they engaged the parking brake. The parties dispute the adequacy of the light bulb used in the display. In support of their Motion to prevent Beauchamp from testifying on the adequacy of the light bulb, Great Northern points to examples from Beauchamp's deposition where he states that he is not a light bulb expert, and where he admitted that the field test he performed on the wreckage of the truck was not conclusive.

In response, Volvo concedes that Beauchamp is not qualified to testify on the specifications and nature of the light bulb used in the truck. Instead, Volvo offers Beauchamp's testimony to assist the trier of fact in determining the cause of the fire. Additionally, Volvo explains that while the field test performed by Beauchamp did not conclusively determine whether the light bulb filament burned out, it remains sufficiently reliable to be admissible. Beauchamp intends to testify that he tested the remains of the electrical grid for continuous electrical circuits. That test serves as an indicator that the light bulb filament was functioning even after the fire destroyed the truck. Volvo and Beauchamp concede that the test is not completely conclusive, but it is nevertheless useful. The Court agrees. Beauchamp is qualified to testify concerning the simple field test that he performed. Furthermore, the Court will admit the deductions that Beauchamp made based on the test. Great Northern's arguments concerning the conclusiveness of the test and the failure to

perform other, more conclusive tests affect the weight of Beauchamp's testimony, not its reliability. However, as Volvo agrees, Beauchamp is not qualified to testify as to the quality and characteristics of the light bulb used in the truck's dashboard display.

### 3. Nathan Ware

Volvo attacks the qualifications and reliability of Great Northern's expert, Nathan Ware. Specifically, Volvo argues that Ware failed to inspect the wreckage of the vehicle or the remains of the light bulb in person. Additionally, Volvo claims that Ware's testimony concerning the design of the brake system and of the warning system is unreliable because it is based on a cursory survey of only a few tractor trailer dealers. In response, Great Northern explains that Ware's training and experience qualify him to testify concerning the design of brake and warning systems. The Court agrees that Ware is qualified in these areas. Great Northern also explains that Ware examined numerous videos and photographs of the wreckage. The Eighth Circuit has held that a district court did not abuse its discretion when it excluded a qualified expert's testimony that was based solely on his impressions of the photographs of the vehicles involved in an accident. J.B. Hunt Transp., Inc. v. Gen. Motors Corp., 243 F.3d 441, 444 (8th Cir. 2001). In that jury trial, the expert planned to reconstruct the accident, but admitted that he had insufficient evidence to do so. Id. In this case, however, Ware's testimony does not depend on reconstructing the accident scene. Instead, it primarily concerns the vehicle's design. Therefore, the Court will allow Ware's testimony on the design of the truck's brake and warning systems. Ware's reliance on photographs and

videos rather than an in-person inspection may affect the weight of his testimony, but should not render the entirety of his testimony invalid.

**B. Volvo's Motion to Exclude Evidence of Subsequent Remedial Measures**

Volvo moves to exclude expected evidence of measures that it took after the truck fire in question to prevent similar accidents in the future. Pursuant to Rule 407 of the Federal Rules of Evidence, such evidence is categorically inadmissible to prove negligence or culpable conduct. However, Rule 407 permits evidence of subsequent remedial measures when offered for a purpose other than to prove liability, such as ownership and control, duty, or feasibility of a remedial measure at the time of the accident. Anderson v. Malloy, 700 F.2d 1208, 1213 (8th Cir. 1983). Great Northern responds that Volvo has submitted, as part of Buckman's report, evidence of subsequent remedial measures. Thus, Great Northern argues that the Court should allow it to offer evidence of subsequent remedial measures for impeachment purposes. The Court agrees. Once Volvo enters evidence of remedial measures into the trial record, Great Northern may offer evidence for the purpose of impeachment without violating Rule 407.

**C. Volvo's Motion to Exclude Evidence of Similar Incidents**

Volvo also moves the Court to exclude evidence of other truck fires caused by driving with the parking brake engaged. Evidence of other incidents has relevance only if the proponent of the evidence can demonstrate that the circumstances between the two incidents are substantially similar. J.B. Hunt Transp., Inc., 243 F.3d at 445 (citing Lovett v. Union Pac. R.R. Co., 201 F.3d 1074, 1081 (8th Cir. 2000)). In products liability cases,

"[e]vidence of similar incidents may be relevant to prove the defendant's notice of defects, the defendant's ability to correct known defects, the magnitude of the danger, the product's lack of safety for intended uses, or causation." Lovett, 201 F.3d at 1081 (citing Drabik v. Stanley-Bostich, Inc., 997 F.2d 496, 508 (8th Cir. 1993)).

While the case law articulates a clear rule on the admissibility of similar incidents, the conduct of the parties clouds the issue in this case. Great Northern moves the Court for sanctions against Volvo because of discovery violations. Volvo initially claimed knowledge of only three truck fires caused by driving a vehicle similar to the truck in question with the parking brake engaged. In fact, Volvo had knowledge of at least nine such truck fires and failed to disclose this information to the other parties. This fact came to light only recently, and even then, Volvo argued that the attorney-client work privilege protected the documents concerning the nine fires. Magistrate Judge Erickson entered an Order compelling disclosure of the documents, despite Volvo's protestations of privilege. (See Clerk Doc. No. 93.) Because it has had little time to analyze the newly disclosed documents, Great Northern questions its own ability to demonstrate a substantial similarity between the truck fire at issue in this case and the other incidents of truck fires. Therefore, Great Northern asks the Court to sanction Volvo in the form of a judicial finding that each of the truck fires now known to the parties was caused by the design defects alleged in this case.

The sanction requested by Great Northern does not appropriately address the present transgression and would require a leap of logic beyond the Court's inclinations. The existence of other incidents does not support a finding that the alleged design defects caused

the fires. Therefore, the Court denies Great Northern's Motion, but will consider its compromised position when determining whether proffered evidence satisfies the substantial similarity test.

**CONCLUSION**

For the foregoing reasons, and upon all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Third-Party Plaintiffs' Motion in Limine to Exclude Leonard Buckman's Testimony or in the Alternative to Exclude Supplemental Reports of Leonard Buckman and Charles Bird is **DENIED in part** and **GRANTED in part**, as follows:
    a. Buckman's testimony on the design of brake systems is generally admissible, including testimony on how those systems indicate to drivers that they are functioning and operable; but
    b. Buckman is not qualified to testify on the adequacy or inadequacy of warning systems;
2. Third-Party Plaintiff's Motion in Limine to Limit Testimony of Paul Beauchamp is **DENIED in part** and **GRANTED in part**, as follows:
    a. Beauchamp is qualified to testify concerning the simple field test that he performed and concerning the deductions that he made based on the test; but

b. Beauchamp is not qualified to testify as to the quality and characteristics of the light bulb used in manufacturing the truck;

3. Third Party Defendant's Motion in Limine to Exclude Testimony of Nathan Ware (Clerk Doc. No. 99) is **DENIED**;

4. Third Party Defendant's Motion in Limine to Exclude Evidence of Subsequent Remedial Measures (Clerk Doc. No. 97) is **DENIED**;

5. Third Party Defendant's Motion in Limine to Exclude Evidence of Other Incidents (Clerk Doc. No. 98) is **DENIED**;

6. Third Party Plaintiff's Motion in Limine for Sanctions (Clerk Doc No. 102) is **DENIED**.

Dated: December 7, 2002

Paul A. Magnuson
United States District Court Judge