UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

U.S. Xpress, Inc.,

Civ. File No. 01-0195 (PAM/RLE)

Plaintiff,

v.

Great Northern Insurance Company
as subrogee of North American
Communications Resource, Inc.,

Defendant.

**MEMORANDUM AND ORDER**

Great Northern Insurance Company
as subrogee of North American
Communications Resource, Inc.,

Third-Party Plaintiff,

v.

Volvo Trucks North America, Inc.,

Third-Party Defendant.

This matter was tried to the Court during the week of December 10, 2002. Third-Party Plaintiff/Defendant claims that it suffered extensive financial loss as a result of defects in Third-Party Defendant's product. For the reasons that follow, the Court determines that Third-Party Defendant is not liable for the damage that Third-Party Plaintiff/Defendant incurred. Plaintiff is liable to Third-Party Plaintiff/Defendant, but its liability is limited pursuant to a contractual provision previously interpreted by this Court. See U.S. Xpress, Inc. v. Great Northern Insurance Co., No. CIV 01-195, 2001 WL 1690051 (D. Minn. Dec. 10, 2001).

FILED JAN 0 8 2003
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD JAN 0 8 2003
DEPUTY CLERK

**BACKGROUND**

In May 2000, North American Communications Resource, Inc. ("NACR") tendered telecommunications equipment to Federal Express ("FedEx") for two shipments from Minnesota to Tempe, Arizona. The first shipment corresponds with FedEx airbill number 412154172466 ("466"). The second shipment corresponds with FedEx airbill number 412154172477 ("477"). NACR secured insurance on the shipments through Defendant and Third-Party Plaintiff Great Northern Insurance Company ("Great Northern"), a subrogee to the rights of NACR, but it did not declare a value on either of the airbills. According to the terms of the airbills, FedEx's liability for the shipments was limited to $100 or $1 per pound. En route to Arizona, the two shipments were destroyed in a truck fire. Great Northern brings products liability claims against the manufacturer of the truck, Third-Party Defendant Volvo Trucks North America, Inc. ("Volvo"), and federal common law claims against Plaintiff U.S. Xpress, Inc. ("USX") for the loss of the two shipments. Great Northern already received a payment of $875.33 from FedEx for the complete loss of the 466 shipment. Great Northern asserts that the actual value of the goods shipped is approximately $400,000. Specifically, Great Northern requests $375,145.62 (value of the lost goods) plus $19,665.92 (NACR's lost profits) plus $2,300 (shipping charges) for a total of $397,111.54.

USX is a shipping company that contracts with FedEx to provide through shipping services. In other words, USX has no contact with FedEx customers; USX picks up shipments directly from FedEx and delivers the shipments to another FedEx location. In this

case, FedEx shipped the goods from Minnesota to Memphis. In Memphis, FedEx tendered the goods to USX for shipment by truck to Arizona. This Court previously issued an order in this case extending the $1-per-pound-limitation of liability from FedEx to USX as well. U.S. Xpress, Inc. v. Great Northern Insurance Co., No. CIV 01-195, 2001 WL 1690051 (D. Minn. Dec. 10, 2001).

Two truck drivers and employees of USX, Wendy Stanfield and James Gardner, picked up the truck and its cargo in Memphis. The drivers drove to a rest stop near Salisaw, Oklahoma, where they stopped to rest and change drivers. Stanfield parked the truck and engaged the tractor brakes only, not the parking brakes attached to the axles on the trailer. After sleeping for approximately two hours, Gardner awoke, left the sleeping quarters of the tractor, and drove away from the rest stop. Gardner drove the vehicle for sixteen miles when he noticed that the truck had caught fire near the driver-side drive wheels. Neither Gardner nor the fire department could extinguish the fire before it destroyed the shipment inside the trailer.

Great Northern and Volvo's experts concur that the fire was caused by Gardner driving the tractor while its parking brakes were engaged. The parties, therefore, do not dispute the cause of the fire. Instead, Great Northern argues that Volvo should have designed the truck's brake system with two additional parking brake chambers on the trailer and that Volvo should have equipped the truck's warning system with a 5000-hour light bulb, instead of the 1000-hour bulb used for the dashboard warning light. Great Northern also argues that Volvo should have designed additional warnings to alert the driver to the fact that the parking

brakes were engaged. The Court identifies the following four products liability claims that Great Northern raises against Volvo:

(1) Strict liability and negligence claims based on a design defect in the truck's parking brake system;

(2) Strict liability and negligence claims based on a design defect in the truck's warning light system;

(3) Negligent failure to warn claim; and

(4) Breach of warranty claim based on defects in the parking brake system and the warning system.

## DISCUSSION

### A. Products Liability Claims

#### 1. Elements

Negligence and strict liability products liability claims merge into one claim, subject to the same legal test in Minnesota. Pitrowski v. Southworth Prods. Corp., 15 F.3d 748, 751 (8th Cir. 1994). To establish liability, a plaintiff must prove: (1) that he was injured, (2) that his injury was caused by the defendant's product, (3) that the injury occurred because the defendant's product was defective, and (4) that the defect was present in the product when it was sold by the defendant. Daleiden v. Carborundum Co., 438 F.2d 1017, 1021 (8th Cir. 1971) (citing Kerr v. Corning Glass Works, 169 N.W.2d 587, 588 (Minn. 1969)); see also Marcon v. Kmart Co., 573 N.W.2d 728, 731 (Minn. Ct. App. 1998) (citing nearly identical list of elements from Bilotta v. Kelley Co., 346 N.W.2d 616, 623 n.3 (Minn. 1984) ("plaintiff must establish (1) that the defendant's product was in a defective condition unreasonably

dangerous for its intended use, (2) that the defect existed when the product left the defendant's control, and (3) that the defect was the proximate cause of the injury sustained.")).

Great Northern then claims that courts must use the "BPL test," the formula devised by Judge Learned Hand, to determine whether a defect was unreasonably dangerous. See Wagner v. Int'l Harvester Co., 611 F.2d 224, 230 (8th Cir. 1979) ("If the likelihood of harm multiplied by its probable magnitude is greater than the cost of preventing that harm, then failure to take the necessary precautions makes the product unreasonably dangerous."). Volvo argues that the BPL test, alone, fails to accurately represent Minnesota law. In addition, Minnesota courts have recognized seven factors to guide triers of fact in their determinations of whether a defect is unreasonably dangerous:

> (1) the usefulness and desirability of the product, (2) the availability of other and safer products to meet the same need, (3) the likelihood of injury and its probable seriousness, (4) the obviousness of the danger, (5) common knowledge and normal public expectation of the danger (particularly for established products), (6) the avoidability of injury by care in use of the product (including the effect of instructions or warnings), and (7) the ability to eliminate the danger without seriously impairing the usefulness of the product or making it unduly expensive.

Holm v. Sponco, 324 N.W.2d 207, 212 (Minn. 1982). The manufacturer exercised reasonable care if it struck an acceptable balance of the seven factors. The breach of warranty claim requires the same legal inquiry. Farr v. Armstrong Rubber Co., 179 N.W.2d 64, 69 (Minn. 1970) (noting that breach of warranty claim is closely related to a products liability claim, and defining breach of warranty in terms of products liability); see also Moe

v. MTD Prods., Inc., 73 F.3d 179, 183 (8th Cir. 1995) (noting similarities between negligence, strict liability, and breach of warranty products liability theories). Therefore, the Court will adjudicate the breach of warranty claim, the negligent products liability claims and the strict liability claims according to the established elements for general products liability claims, including the factors used to determine if a product is unreasonably dangerous.

### 2. Brake System Design

Great Northern makes much of the fact that the tractor at issue in this case had a two-brake parking brake system. It argues that Volvo should have designed the truck with a four-brake parking brake system instead. Great Northern argues that in this case, Gardner easily overrode the two-brake system, given the power of modern-day tractor engines. Great Northern supposes that a driver operating a tractor with four parking brakes engaged would not be able to override the brake system. Great Northern presented testimony that the diesel engine would stall if a driver tried to move the vehicle with four parking brakes engaged. At the very least, the drag created by four parking brakes would alert the driver to the situation and be impossible to ignore. Great Northern concludes, therefore, that the fire in this case would not have occurred because the two drivers would have known that they were operating the vehicle with the parking brakes engaged.

The Court reaches a different conclusion. While a four-brake system might have prevented the truck fire in this case, Great Northern asks the Court to make a logical leap when it concludes that a two-brake system was therefore unreasonably dangerous. Great Northern has not offered evidence to show that all two-brake systems pose inherent fire

hazards. The expert witnesses described the various design models used in the trucking industry and explained that a parking brake chamber attaches to an axle about the wheel, allowing two chambers per axle. In addition, the Court learned that all tractors have a steer axle and either one or two drive axles. Manufacturers can only attach parking brakes on the drive axles. Great Northern claims that Volvo designed a dangerous and defective product because it only built parking brake chambers on one of the two possible tractor axles. Instead, it argues, Volvo should have attached brake chambers on both possible tractor axles. Such a design would have prevented the fire in this case because of the resistance of the two additional brake chambers. However, to conclude that this design poses inherent dangers, the Court would have to declare the parking brake systems on all single-drive axle tractors dangerously defective. Applying the seven Holm factors, the Court reaches an easy decision: all single-drive axle tractors are not defective. See Holm, 324 N.W.2d at 212. Furthermore, had Gardner attempted to drive the vehicle with both the tractor and the trailer parking brakes engaged, instead of with the tractor brakes engaged and the trailer brakes disengaged, he would have quickly noticed his error, given the additional drag of the trailer brakes. Therefore, Great Northern has not demonstrated that the design of the tractor's parking brake system is dangerous and defective, or that the alleged defect was the proximate cause of the injury.

**3. Indicator Light Design**

In a manner that substantively overlaps with its failure to warn claim, Great Northern argues that Volvo defectively designed the truck's warning system. First, it points out the

obvious performance differences between using a 1000-hour bulb and using a 5000-hour bulb to illuminate the dashboard warning light that should indicate when the driver has engaged the parking brakes. In this case, they argue that the light bulb burned out frequently, and they postulate that the light bulb in this tractor had burned out, leaving Gardner and Stanfield without any warning or indication that they had engaged the vehicle's parking brakes. Instead, Great Northern contends that Volvo should have foreseen the possibility that its 1000-hour bulb would burn out and fail to illuminate the warning light. Volvo, therefore, designed a product with an inadequate warning system, as the tractor contained no audible warning device, nor any other back-up warning device. Again, this Court disagrees that the brake indicator light rendered the tractor unreasonably dangerous and defective.

Volvo offered convincing evidence to demonstrate that its choice of a 1000-hour bulb was reasonable. Great Northern bears the burden of proof to show that Volvo struck an unreasonable balance among the seven Holm factors. Great Northern presented only sparse evidence at trial to show that the light had failed to function in this case at all. It was similarly unable to persuade the Court that the manufacturer, and not the user, has any duty to replace consumable equipment, such as light bulbs, or windshield wipers, or tires, or any other essential consumable equipment. Great Northern also failed to show that the 1000-hour light bulb varied from the 5000-hour light bulb in its usefulness, safety, or dependence on the consumer to inspect or replace it as necessary. Therefore, Great Northern did not show that Volvo's choice of a 1000-hour bulb over a 5000-bulb unreasonably balances the Holm factors so as to render the tractor unreasonably dangerous.

**B. Failure to Warn**

Because Great Northern separated its failure to warn claim from its design defect claims, the Court understands Great Northern's negligent failure to warn claim as independent of the claim that Volvo's truck had an unreasonably dangerous defect in the design of its warning system. In this way, Great Northern argues that Volvo's alleged failure to warn was itself a negligent act that rendered the truck dangerous and defective, independent of any alleged design defects. To establish a failure to warn claim, a plaintiff must show that: (1) there was a duty to warn about the risk in question; (2) the warnings given, if any, were inadequate; and (3) the lack of an adequate warning was the cause of the plaintiff's injuries. Balder v. Haley, 399 N.W.2d 77, 81 (Minn. 1987). The existence of a duty to warn is a question of law. Id. In Minnesota, manufacturers have a duty to warn users of their products of all the dangers associated with those products of which the manufacturer has actual or constructive knowledge. Mozes v. Medtronic, Inc., 14 F. Supp. 2d 1124, 1129 (D. Minn. 1998) (Kyle, J.) (citations omitted).

In this case, Great Northern fails to show any of the three elements required to prevail on a failure to warn claim. First, Great Northern fails to show that Volvo had actual or constructive notice that its failure to include an audible warning device or any other warning posed any danger at all. The record shows that Gardner and Stanfield did not park the tractor-trailer properly, leaving the tractor brakes engaged and the trailer brakes disengaged. Even assuming that the warning light failed to operate, Volvo had no actual or constructive knowledge that both of these improbable events would occur at the same time. Therefore,

the Court finds that as a matter of law, Volvo did not owe anyone a duty to warn about the particular risk in question. Second, even assuming a duty existed, Great Northern failed to show that the warnings Volvo did give were inadequate. Volvo readily lists the many ways in which its warning systems indicate to a driver when the parking brakes are engaged. The two knobs have clear instructions for their use and have distinct tactile and visual characteristics that clearly inform a driver when the parking brakes are engaged. The brakes also make an audible sound when applied or released. Volvo also included warnings in the owner's manual supplied to Gardner and Stanfield. Great Northern did not present evidence to show that the existing warnings were inadequate, apart from the occurrence of the fire itself. Third, had Gardner and Stanfield heeded the existing and reasonably obvious warnings given by Volvo, the accident would not have occurred. Thus, Great Northern failed to show that Volvo's warning system and not user negligence was the cause of its injuries.

### C. Claims Against USX

Great Northern also argues that USX is liable for the loss of the equipment, since USX personnel drove the tractor with brakes engaged, causing the fire. In its defense, rather than attempt to show that its drivers conformed to the behavior of a reasonably prudent person, USX merely repeats the arguments it made at the summary judgement phase of this litigation. First, USX argues that neither party showed that the cargo in question was actually on the truck that was destroyed by fire in this case. Second, USX contends that Great Northern failed to comply with the requirements necessary to report a claim to FedEx, precluding recovery in this action. The Court previously rejected both assertions. See U.S. Xpress,

Inc. v. Great Northern Insurance Co., No. CIV 01-195, 2002 WL 31433274 (D. Minn. Oct. 25, 2002). Therefore, USX is liable to Great Northern for the loss of its equipment. However, USX's liability is limited to $1 per pound, id. at *3, for a total of $694.00.

**CONCLUSION**

Defendant/Third-Party Plaintiff failed to prove that Third Party Defendant is liable to it for the losses it incurred. Plaintiff, however, is liable to Defendant/Third-Party Plaintiff in the amount of $694.00. Accordingly, **IT IS HEREBY ORDERED** that:

1. Judgment be entered in favor of Third-Party Defendant with respect to Defendant/Third-Party Plaintiff's claims; and
2. Judgment be entered in favor of Defendant/Third-Party Plaintiff with respect to its claims against Plaintiff in the sum of $694.00.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: January 8, 2003

Paul A. Magnuson
United States District Court Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 U. S. Courthouse
515 West First Street
Duluth, MN 55802
(218) 529-3500

## NOTICE

The latest amendments to the federal rules of procedure, (Civil, Criminal, Appellate and Bankruptcy), went into effect on December 1, 2002. The new amendments and related committee notes can be found at www.uscourts.gov/rules/amendments0202.htm.

One change is particularly noteworthy. That is Rule 7.1 of the Federal Rules of Civil Procedure. This rule requires that corporations file a "disclosure statement" whenever they initially appear as a party in a federal court action. The Rule 7.1 Disclosure Statement must identify "any parent corporation and any publicly held corporation that owns 10% or more" of the stock of the corporate party filing the statement. The purpose of the disclosure statement is to help judges and magistrate judges identify potential conflicts of interest. (Similar disclosure statement requirements are prescribed by Rule 26.1 of the Federal Rules of Appellate Procedure and Rule 12.4 of the Federal Rules of Criminal Procedure.)

Beginning December 1, 2002, a Rule 7.1 Disclosure Statement must be filed by every corporation when it first appears in a federal action, even if the corporation merely reports that there is no parent corporation or publicly held corporation that owns 10% or more of its stock. These Disclosure Statements must also be filed retroactively, for every corporation which is a party to an action pending in this District as of December 1, 2002. The retroactive Rule 7.1 statements must be filed immediately.

It also should be noted that there have been extensive stylistic changes, (as well as a few substantive changes), to the Federal Rules of Criminal Procedure. Attorneys who appear in federal criminal cases should review the amended version of the Rules.